UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BISHERRA W.,[1] *Plaintiff*, | ) ) ) 3:23-cv-1421 (SVN) |
| v. | ) ) |
| COMMISSIONER OF SOCIAL SECURITY, *Defendant*. | ) ) ) ) December 30, 2024 ) |

### RULING ON PLAINTIFF'S MOTION TO REVERSE OR REMAND AND DEFENDANT'S MOTION TO AFFIRM DECISION OF COMMISSIONER

Sarala V. Nagala, United States District Judge.

Plaintiff Bisherra W. filed an application for supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff now appeals the decision of an Administrative Law Judge ("ALJ") finding that she was not under a disability within the meaning of the Social Security Act since December 4, 2020, the date the application was filed. Plaintiff argues that the ALJ's conclusion that Plaintiff presented no severe impairments is not supported by substantial evidence; that the ALJ erred in concluding that Plaintiff's combination of impairments did not meet or medically equal the severity of a listed impairment; that the ALJ's conclusion regarding Plaintiff's residual functional capacity ("RFC") is not supported by substantial evidence; and that the vocational expert's testimony, which Plaintiff alleges served as the basis for the ALJ's determination that Plaintiff could perform substantial gainful employment, was incorrect. Plaintiff also alleges, generally, that the ALJ did not appropriately consider her fibromyalgia condition. The Commissioner moves for affirmance of the ALJ's decision. For the following reasons,

---

[1] In opinions issued in cases filed pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), this Court will identify and reference any non-government party solely by first name and last initial, in order to protect the privacy interest of social security litigants while maintaining public access to judicial records. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

Plaintiff's motion to reverse, or in the alternative, remand, is DENIED, and the Commissioner's motion to affirm the decision of the Commissioner is GRANTED.

## I. BACKGROUND

The Court will assume the parties' familiarity with Plaintiff's medical history, as summarized in her statement of facts, Pl.'s Br., ECF No. 23-1, at 1–4, which the Commissioner adopts "without any inferences or conclusions asserted therein," the ALJ's summary of the procedural history and facts, and the Commissioner's supplements, Def.'s Br., ECF No. 26-1, at 2–4. The Court adopts and incorporates by reference these statements of fact. The Court will also assume familiarity with the five sequential steps used in the analysis of disability claims, the ALJ's opinion, and the record. The Court will only cite portions of the record and the legal standards necessary to explain its decision.

## II. STANDARD OF REVIEW

It is well-settled that a district court will reverse the decision of the Commissioner as to whether a claimant is disabled only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See, e.g.*, *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (*per curiam*); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).

"In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417

(2d Cir. 2013) (*per curiam*) (internal quotation marks and citation omitted). "Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently." *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009). The court must therefore "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and reject the Commissioner's findings of fact only "if a reasonable factfinder would *have to conclude otherwise*," *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original). Stated simply, "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian*, 708 F.3d at 417.

## III.   DISCUSSION

The Court holds that the ALJ's determination that Plaintiff was not under a disability at any time from the alleged onset date (December 4, 2020) is supported by substantial evidence and that the ALJ did not err in her evaluation of the vocational specialist's testimony. On appeal, Plaintiff challenges the ALJ's conclusions at steps two, three, four, and five of the disability claims analysis. In doing so, Plaintiff seeks to reference evidence not in the record at the time of the ALJ's review. The Court addresses this issue first.

### A.   Plaintiff's Additional Evidence Is Not Admissible

The Court concludes that the supplemental evidence Plaintiff has filed with her brief is not admissible. Accompanying her motion to reverse the Commissioner's denial, Plaintiff filed four exhibits, which she relies upon throughout her brief to support her argument. *See* ECF Nos. 23-2, 23-3. These additional exhibits are (1) a letter from Dr. Noel Turner dated February 22, 2024, indicating that he treated Plaintiff for flu and excusing her from work and school until March 11, 2024, ECF No. 23-2; (2) an undated letter from Dr. Justin Banerdt stating that Plaintiff "has a diagnosis of fibromyalgia based upon our medical opinion, which has been corroborated by

3

evaluation by rheumatology and physical medicine and rehabilitation," ECF No. 23-3 at 1; (3) a treatment note from Lory Jololian, LPC dated March 30, 2021, summarizing Plaintiff's treatment progress, ECF No. 23-3 at 2–3; and (4) an undated letter from Plaintiff's son indicating he and other family members assist Plaintiff due to her mental and physical challenges, ECF No. 23-3 at 4. The letter from Dr. Banerdt was previously submitted as part of the record that went before the Appeals Council, *see* Tr., ECF No. 14, at 2, while the remaining three exhibits were not included in the record that went before the ALJ or the Appeals Council. *See* Def.'s Br. at 21–25.

The Court may remand a case and order the Commissioner to consider additional evidence not previously before the ALJ "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42. U.S.C. § 405(g). Courts in the Second Circuit have interpreted this provision as amounting to a three-prong test. *See Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991). First, the party must show that the evidence is new, rather than "merely cumulative" of evidence already in the record. *Id.* Second, the party must show that the evidence is material, meaning both relevant to the time frame at issue in the application and as having a reasonable possibility that it would have influenced the Commissioner's determination. *Id.* Third, the party must show that good cause existed for failing to present new evidence at an earlier point in the case. *Id.*

Plaintiff is unable to satisfy this test as to any of the four pieces of evidence she seeks to have the Court consider as part of her appeal. First, the March 2024 letter from Dr. Turner is not material to this matter. Although this evidence was not available at the time of the ALJ's hearing or decision through no fault of Plaintiff, the letter was not material to the Commissioner's decision, as it post-dated the ALJ's decision by nearly two years. *See Chubbuck v. Astrue*, No. 3:10-CV-1689 (WWE), 2011 WL 2446308, at *2 (D. Conn. June 17, 2011) (concluding that evidence about

4

a possible disability outside the relevant time period was not material). Additionally, it pertains to a flu diagnosis, which does not appear to relate to Plaintiff's alleged disability. As such, the Court does not consider this letter.

Second, the letter from Dr. Banerdt confirming Plaintiff's diagnosis of fibromyalgia also fails the three-prong test. This letter is not dated, meaning the Court cannot assess whether it is material to the time period relevant to this matter. *See* ECF No. 23-3 at 1. Further, even if it were dated, this letter would not have had a reasonable probability of changing the Commissioner's decision, as noted by the Appeals Council. *See* Tr. 2 ("You submitted evidence from Justin K Banerdt, MD, dated February 22, 2023, a total of 5 pages. We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence."). As discussed below, for fibromyalgia to constitute a severe impairment and thus support a finding of disability, more than a diagnosis is needed; specific diagnostic and symptomatic criteria must be documented. *See* Social Security Ruling 12-2p, 2012 WL 3104869, *2 ("SSR 12-2p"). This letter provides no evidence of Plaintiff's condition beyond a formal diagnosis; therefore, it would not alter the outcome of the Commissioner's decision.

Third, the Court must also disregard the progress update from Lory Jololian. As the Commissioner highlights, this previously unsubmitted progress update contradicts Ms. Jololian's contemporaneous statements made in evidence on the record before the ALJ. *See* Def.'s Br. at 24; Tr. 765. On March 24, 2021, Ms. Jololian stated that Plaintiff "endorsed stable mood and congruent affect." Tr. 765. Ms. Jololian also reported that Plaintiff's behavior was "cooperative" and "engaged," that Plaintiff showed "good" impulse control; that Plaintiff's thought process was "appropriately conversant" and "coherent"; and that Plaintiff's thought content was "appropriate for [the] situation." Tr. 765–66. Ms. Jololian's progress update now presented by Plaintiff, dated

5

March 30, 2021, and noting Plaintiff's last treatment session was on March 24, 2021, paints a somewhat different picture, indicating that Plaintiff had "significant impairments in social and occupational functioning," significant difficulty in "maintain[ing] consistency in focus/concentration" which would impact her ability to work, and "inconsistencies in mood regulation, impulse control, and interpersonal relationship skills" that "significantly impact[s] [Plaintiff's] occupational functioning." ECF No 23-3 at 2–3. These conclusions not only contradict Ms. Jololian's March 24, 2021, progress notes included in the record, but also subsequent progress notes included in the record where Ms. Jololian endorsed similar conclusions as those noted on the March 24, 2021, progress notes. *See, e.g.*, Tr. 776–77 (nothing euthymic mood and cooperativeness in notes from May 12, 2021, visit); 790–91 (same for June 21, 2021, visit). Plaintiff does not endeavor to explain why the notes from Ms. Jololian reviewed by the ALJ and this new exhibit differ. But the multiple notes within the record that did go before the ALJ support the ALJ's conclusion and suggest that this new March 30, 2021, record is immaterial, as it does not have a reasonable possibility of altering the Commissioner's decision, given the substantial evidence in the record supporting the ALJ's findings.[2]

Finally, the Court must disregard the letter from Plaintiff's son stating that Plaintiff receives support from family members, as it is cumulative of evidence already in the record that went before the ALJ. *See* ECF No. 23-3 at 4. The ALJ noted that Plaintiff "requires assistance managing her household," indicating that the Court was already aware of similar facts as those asserted by Plaintiff's son. *See* Tr. 18. Additionally, as the letter is undated, the Court cannot

---

[2] The new record from Ms. Jololian also does not qualify as a medical opinion under 20 C.F.R. § 416.913(a)(2)(i), as it does not opine on what Plaintiff can still do despite her impairments and whether she has any specific impairment-related limitations. Without such specification, the Court cannot conclude that the new record in fact conflicts with the ALJ's findings. Indeed, the ALJ addressed Plaintiff's difficulties by restricting her to simple and routine work that only occasionally involved interaction with others and was performed in a stable and predictable environment. Tr. 17.

6

conclude that it is material to the time period relevant to Plaintiff's disability application. Finally, Plaintiff also failed to provide good cause as to why this letter was not initially submitted as part of the record. As such, this letter must be disregarded.

B. Substantial Evidence Supports the ALJ's Finding

Substantial evidence supports the ALJ's finding that Plaintiff was not under a disability during the relevant timeframe. Plaintiff challenges aspects of each step in the disability claims analysis; therefore, the Court addresses each in turn.

*1. Impairment Severity*

To begin, Plaintiff argues that the ALJ erred when she determined that Plaintiff's plantar fasciitis, knee, back, and lower extremity pain, and post-traumatic stress disorder ("PTSD") did not constitute severe impairments.[3] Pl.'s Br. at 4. Plaintiff generally assets that the ALJ "minimized [her] symptoms" and overstated the extent to which her symptoms were being medically managed to incorrectly determine these impairments were not severe. *Id.* at 4–5. But the ALJ's findings are supported by substantial evidence. Indeed, the ALJ's conclusions that Plaintiff's conditions of plantar fasciitis, knee, back, and lower extremity pain, and PTSD were medically determinable impairments but were not severe are each supported by specific findings for each condition based on the record. *See* Tr. 14.

With regard to Plaintiff's plantar fasciitis, the ALJ concluded that it was non-severe because "[t]he longitudinal record shows the claimant's plantar fasciitis is well-managed with orthopedic inserts." Tr. 14; *see also* Tr. 1121 (doctor's notes stating that Plaintiff had been getting

---

[3] Plaintiff states that the ALJ erred in classifying Plaintiff's PTSD, obesity, plantar fasciitis, knee pain, back pain, and pain in the upper and lower extremities as "non-severe impairments"; however, Plaintiff only presents arguments as to why the categorization of her PTSD, plantar fasciitis, and knee, back, and lower extremity pain was not supported by substantial evidence, omitting any argument about obesity and pain in her upper extremities. *See* ECF No. 23-1 at 4–5. As such, the Court concludes that Plaintiff waived any argument about the ALJ improperly classifying obesity and pain in the upper extremities as "non-severe impairments."

"good relief" from using her orthotics, and suggesting that continued discomfort in her feet may stem from "very frequently . . . wearing dress shoes"). Plaintiff disputes this conclusion, noting that this fails to account for Plaintiff's ongoing back, knee, and lower extremity pain.[4] Pl.'s Br. at 4–5. But the ALJ did consider such pain and concluded that "claimant's pain complaints are not consistent with the evidence and her physical impairments do not cause severe work-related physical limitations." Tr. 14 (noting that the longitudinal record shows that Plaintiff "shows normal electromyography (EMG) results, [and] normal strength in the upper and lower extremities bilaterally"). The finding that Plaintiff's plantar fasciitis and seemingly associated back, knee, and lower extremity pain were being managed medically and non-severe is based on "more than a mere scintilla" of evidence. *Talavera*, 697 F.3d at 151. Additionally, Plaintiff does not adequately show—and the Court, upon review of the record cannot independently find—that a reasonable fact finder would "have to conclude otherwise." *Brault*, 683 F.3d at 448 (emphasis removed).

The Court determines that the ALJ's finding that Plaintiff's PTSD was non-severe was also supported by substantial evidence. Plaintiff argues that this finding is "a mistake because plaintiff addressed symptoms of traumatic situations with her psychologist that cause" a set of symptoms. Pl.'s Br. at 5. In reviewing the record as a whole, however, the ALJ determined that Plaintiff "endorsed symptoms consistent with PTSD" but these asserted symptoms were not supported by "objective examinations," including because the record indicates that Plaintiff did not display trauma response symptoms. Tr. 14. Further, the record suggests that although Plaintiff asserts a diagnosis of PTSD, no such formal diagnosis exists; rather, multiple physicians only indicated that they would "r/o PTSD," meaning rule out PTSD as a possible diagnosis. *See* Def.'s Br. at 7

---

[4] It is unclear from Plaintiff's filing whether her back, knee, and lower extremity pain is a symptom of plantar fasciitis or is a separate impairment. As they were addressed in the same paragraph as plantar fasciitis in both Plaintiff's brief and the ALJ's brief, the Court is assuming that these asserted maladies relate to plantar fasciitis and thus will analyze them as part of its consideration of Plaintiff's plantar fasciitis argument.

(arguing that the record does not confirm a diagnosis of PTSD). Accordingly, with respect to the ALJ's conclusion that Plaintiff's PTSD was non-severe, Plaintiff does not adequately show—and the Court, upon review of the record, cannot independently find—that a reasonable fact finder would have concluded otherwise. *Brault*, 683 F.3d at 448. Instead, the record shows that substantial evidence supports the ALJ's conclusion; thus, this Court must uphold that conclusion.

Additionally, although it is unclear whether Plaintiff is challenging the ALJ's determination that Plaintiff's fibromyalgia does not constitute a medically determinable impairment, the Court nonetheless finds that this conclusion is supported by substantial evidence.[5] On appeal, Plaintiff argues that because she was diagnosed with fibromyalgia by her medical providers, the ALJ erred in concluding that it was not a medically determinable impairment. Pl.'s Br. at 6–7. As the ALJ explained, however, a diagnosis of fibromyalgia, on its own, is insufficient to establish a medically determinable impairment. *See* Tr. 15; SSR 12-2p (explaining how a diagnosis of fibromyalgia is evaluated for the purposes of disability claims, specifically noting that the Social Security Administration "cannot rely upon the physician's diagnosis alone"). Rather, evidence must also demonstrate that Plaintiff meets specific diagnostic criteria. Tr. 15–16. The ALJ acknowledged that the longitudinal record shows Plaintiff was diagnosed with fibromyalgia, but that such diagnosis was largely based on Plaintiff's subjective reports, rather than on objective findings upon examination. *Id.* The record contains an undated document seemingly submitted by Plaintiff as part of her appeal that sets forth a series of symptoms she appears to be experiencing, as well as their impact on her life. *See* Tr. 37–38. But this document is not signed by anyone

---

[5] Plaintiff raises objections to the ALJ's evaluation of her fibromyalgia diagnosis in several separate arguments in her brief. Her first argument is made under a heading related to the ALJ's determination that Plaintiff's combination of impairments did not meet or medically equal the severity of a listed impairment. The initial paragraphs of her argument, however, seek to instead refute the ALJ's determination that Plaintiff failed to establish the presence of medically determinable fibromyalgia.

other than Plaintiff, suggesting that it is her subjective summary of her condition; nor does it indicate the timeline of these symptoms and their impacts. *See id.* These statements, absent medically-supported evidence, fail to contradict the ALJ's determination that Plaintiff's fibromyalgia is not a medically determinable impairment. Reviewing both the ALJ's determination, and the record as a whole, the Court concludes that Plaintiff has failed to show that no reasonable factfinder could have reached the same conclusion as the ALJ—that Plaintiff's fibromyalgia is not a medically determinable impairment. As such, the ALJ's determination stands.

### 2. *Impairments Did not Meet or Medically Equal the Severity of a Listed Impairment*

The Court also affirms the ALJ's determination that Plaintiff's combination of impairments did not meet or medically equal the severity of a listed impairment, as this conclusion is supported by substantial evidence. Although somewhat unclear, Plaintiff seems to object to the ALJ's findings that Plaintiff only has mild or moderate limitations of the "paragraph B" criteria for Plaintiff's severe mental impairments—major depressive disorder and intermittent explosive disorder—to conclude that Plaintiff's impairment or combination of impairments does not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. P. 404, Subpt. P, Appendix 1 ("App. 1"). *See* App. 1 §§ 12.04 (describing the criteria to assess the severity of "depressive, bipolar, and related disorders"); 12.08 (describing criteria to assess the severity of "personality and impulse-control disorders").

First, Plaintiff argues that the ALJ wrongly determined that she has only a mild limitation in understanding, remembering or applying information. Pl.'s Br. at 6. Plaintiff mistakenly relies on evidence of her worsening fibromyalgia to support her claims of a more significant limitation. *Id.* But the criteria evaluated by the ALJ are intended "to evaluate how [an individual's associated]

10

mental disorder limits [their] functioning." *See* App. 1 § 12.00(A)(2)(b).  For Plaintiff, that means the ALJ was required to examine how her major depressive disorder and intermittent explosive disorder both separately and collectively impacted her functioning, not how fibromyalgia symptoms impacted her functioning.  The ALJ and the Commissioner both identify substantial evidence in the record that support the ALJ's mild limitation finding, as does this Court's review of the record.  *See* Tr. 16; Def.'s Br. at 9 (citing record evidence).  As such, the ALJ's determination must be upheld.

Additionally, the Court finds that the ALJ properly concluded that Plaintiff has a mild limitation in understanding, remembering, or applying information, and a moderate limitation in interacting with others.  To challenge this conclusion, Plaintiff refers to the March 30, 2021, treatment update from Ms. Jololian discussed above.  Pl.'s Br. at 6–7.  For the reasons noted above, the Court cannot consider this additional evidence, which is the only support for Plaintiff's position that the ALJ erred.  The remaining record evidence demonstrates that Plaintiff cooperated with her medical treatment providers during visits, usually exhibited good impulse control, utilized strategies learned in treatment to avoid impulsive behavior and anger, and had social interactions with various people, supporting the conclusion that she had less than marked limitation in interacting with others.  *See* Def.'s Br. at 9–10 (citing record evidence).  Therefore, the ALJ's determination must be upheld as substantial evidence in the record supports her conclusion.

The Court also must uphold the ALJ's determination regarding Plaintiff's ability to concentrate, persist, or maintain pace.  Plaintiff again seeks to support her argument by relying on evidence outside of the record that went before the ALJ, while failing to identify any support within the record that the ALJ reviewed.  Pl.'s Br. at 6–7.  As noted above, the Court cannot consider the additional evidence.  As such, it finds no support for Plaintiff's position that the ALJ's

determination regarding Plaintiff's ability to concentrate, persist, or maintain pace was not supported by substantial evidence.

For similar reasons, the Court also must affirm the ALJ's finding the Plaintiff only has a mild limitation in adapting and managing herself. Plaintiff argues that the ALJ relies upon her assistance of her stepmother with her catering business to reach this conclusion, but that she is no longer able to do this because of her pain. *See* Pl.'s Br. at 7. While the ALJ relies on that fact in part, she also cites to other portions of the record that support her finding. *See* Tr. 17 (noting Plaintiff's ability to get herself groomed and dressed, lack of psychiatric hospitalization, ability to function without a highly structured environment). Further, Plaintiff fails to identify anything in the record to indicate that the ALJ was aware that she stopped assisting her stepmother, nor could this Court identify any such information or that this change in circumstances occurred during the relevant time period. Substantial evidence in the record supports the ALJ's finding that Plaintiff only has a mild limitation in adapting and managing herself during the relevant time period; therefore, this Court upholds the ALJ's determination.

Finally, Plaintiff objects to the ALJ's determination that Plaintiff also did not meet the "paragraph C" criteria. The paragraph C criteria may be used as an alternative to the paragraph B criteria to evaluate certain mental health conditions when "mental health interventions may control more obvious symptoms and signs of a mental disorder." *See, e.g.*, 20 C.F.R. P. 404, Subpt. P, App. 1 § 12.00(G); § 12.04. As is relevant to Plaintiff, these criteria are only considered in relation to her major depressive disorder and not her impulse control disorder. *See id.* § 12.00(A)(2)(c) (noting that paragraphs A and B are relevant to listing 12.08, concerning impulse control disorder and paragraphs A, B, and C are relevant to listing 12.04, relating to major depressive disorder). To meet the requirements of paragraph C, a plaintiff bears the burden of showing three things: (1)

her mental disorder is serious and persistent, meaning that it has been medically documented over a period of at least two years; (2) evidence of medical treatment, mental health therapy, psychosocial supports, or a highly structured setting that is ongoing and diminishes the symptoms and signs of the mental disorder; and (3) evidence of marginal adjustment, defined as "minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life." *Britney R. v. Comm'r of Soc. Sec.*, No. 3:23-cv-692 (MPS) (TOF), 2024 WL 4258190, at *6 (D. Conn. July 9, 2024), *report and recommendation adopted* (July 26, 2024).

Plaintiff disagrees with the ALJ's conclusion that Plaintiff "does not rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial supports, or a highly structured environment to diminish the signs and symptoms of her mental disorder," *see* Pl.'s Br. at 7; Tr. 17, countering that she "did get seen by physical therapist, multiple doctors, and [has] been put on multiple medications to see what works better and talked to a therapist." Pl.'s Br. at 7. Such a broad statement regarding supports, however, is insufficient to establish the presence of paragraph C criteria. *See* 20 C.F.R. P. 404, Subpt. P, App. 1 §§ 12.00(G)(2)(b) (describing how to assess paragraph C1 criteria); 12.00(D) (providing examples of supports). Although the record demonstrates that Plaintiff engaged in ongoing mental health counseling and treatment, and even if the Court assumes, without deciding, that Plaintiff met her burden of showing that the treatment diminishes the signs and symptoms of her mental disorder, the evidence in the record does not demonstrate marginal adjustment. Plaintiff does not offer anything specific on this score, despite bearing the burden to do so. The Court therefore finds that the ALJ's conclusion with respect to the paragraph C criteria, while brief, is supported by substantial evidence and must be upheld.

13

### 3. *Residual Functional Capacity*

The Court next concludes that ALJ's determination regarding Plaintiff's RFC is supported by substantial evidence. Although her arguments are somewhat unclear, Plaintiff appears to take issue with the ALJ's RFC determination that Plaintiff does not have any exertional limitations and that Plaintiff can occasionally interact with others. *See* Tr. 17; Pl.'s Br. at 8, 12. First, Plaintiff argues that the ALJ's determination that Plaintiff does not have any exertional limits is not supported by substantial evidence because Plaintiff is experiencing symptoms of fibromyalgia. Pl.'s Br. at 8. The Court finds this unpersuasive. As discussed above, substantial evidence supports the conclusion that Plaintiff's fibromyalgia is not a medically determinable impairment. Therefore, the ALJ was not required to consider any fibromyalgia symptoms in assessing Plaintiff's RFC. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order) (recognizing that an RFC determination must account for medically determinable impairments, both severe and non-severe).

Plaintiff also takes issue with the ALJ's RFC determination in relation to her mental impairments. Plaintiff indicates that she stopped taking Prozac because it made her sick and that the ALJ's determination that she had only a "moderate limitation" in interacting with others was not supported by substantial evidence. Pl.'s Br. at 8, 11. The ALJ's opinion, however, cites to multiple points in the record supporting the conclusion that Plaintiff's anger and anxiety improved when she engaged in treatment, including taking Prozac and engaging in therapy. Tr. 20. The ALJ also acknowledged that even though Plaintiff exhibited some noncompliance with these treatments—and particularly with her Prozac usage—she was aware of the ways they helped improve her symptoms. Tr. 19–22. Even with these symptom improvements, the ALJ recognized that Plaintiff's anger issues did impact her ability to interact with others and thus required certain

non-exertional imitations, including only occasional interaction with others, no interaction with the general public, and no collaborative or team-based work. Tr. 17. Plaintiff fails to show why these limitations are insufficient and not supported by substantial evidence on the record. As such, the Court upholds the ALJ's RFC determination.

### C. The Vocational Expert's Testimony

The ALJ properly weighed the opinion provided by the vocational expert at the hearing, contrary to Plaintiff's arguments. Plaintiff argues that the vocational expert "gave incorrect info[rmation]" which the ALJ relied upon to inform her determination that Plaintiff could perform substantial gainful employment. Pl.'s Br. at 9–11. In response to a hypothetical posited by the ALJ, the vocational expert testified that, based on her opinion, training, education, and work experience, approximately 75 percent of work environments that align with Plaintiff's RFC would permit an individual to take unscheduled breaks, arrive late, or leave early. *See* Tr. 66. Plaintiff then asked the vocational expert about whether any such policy would depend on the particular employer, and the vocational expert answered in the affirmative, based on her opinion and experience. Tr. 66–67. Plaintiff appears to suggest that the vocational expert was, in some fashion, hiding the fact that different jobs will have different policies about breaks and absences, and she contends that her own employers have not been willing to tolerate her medical needs. Pl.'s Br. at 11.

Although Plaintiff disagrees with the vocational expert's testimony due to her own lived experiences seeking and holding employment, that does not render the ALJ's judgment improper. To the extent there was conflicting evidence, the law demands that the Court "defer to the Commissioner's resolution" of it. *Cage*, 692 F.3d at 122. Further, ALJs are permitted to rely on vocational expert opinion evidence where such information is not addressed by the Dictionary of

15

Occupational Titles ("DOT").  *See* Social Security Ruling 00-4p, 2000 WL 1898704, at *2 ("Evidence from VEs or VSs can include information not listed in the DOT. . . Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or *from a VE's or VS's experience in job placement or career counseling*.") (emphasis added).  The ALJ weighed the evidence before her, including the exchange in which the vocational expert acknowledged Plaintiff's point that not all jobs have the same requirements and the expert's opinion that jobs that fit her RFC nonetheless still exist, and concluded that several jobs exist that would meet Plaintiff's age, education, work experience, and RFC.  This determination is supported by substantial evidence and thus must be upheld.

## IV.    CONCLUSION

For the reasons described herein, Plaintiff's motion to reverse or remand is DENIED and Defendant's motion to affirm the Commissioner's decision is GRANTED.

The Clerk of Court is directed to enter judgment for Defendant and close the case.

**SO ORDERED** at Hartford, Connecticut, this 30th day of December, 2024.

  /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE